I please the Court, William Delgado on behalf of Plaintiff Appellants. I'd like to begin by addressing the appeal on the order for the motion to dismiss. Professor Martin will address the appeal on the sanctions order. The two interrelated issues that arise on the motion to dismiss stem from a single fact pattern, which is this. The defendant tells the plaintiff, if you give me money, I will give you shares in a corporation without intent to actually provide those shares. And the two issues that result from that fact pattern are this. Number one, does that represent a substantive violation of the Federal Securities Laws? And number two, if it does, does a private plaintiff have standing in a Federal court to serve that motion? Dr. Martin Let me come right to what seems to me to be the guts of this case, to me, is under Section 10b, there has to be fraud in connection with the purchase or sale of a security, right? That's correct, Your Honor. And what is the fraud that you claim was committed? I looked at your complaint. As far as I can see, all you allege under the securities claim is that he agreed to buy some stock for them, they gave him some money, and he didn't buy the stock. And that looks to me like a typical breach of contract claim. You don't allege in your complaint that at the time that he took the money, he had no intention and intended to convert the money and to put it, and not to turn over the stock to them. And it's, to me, very significant that in your state claim for deceit, you do make that allegation. And when you were offered the opportunity in the district court to amend your complaint, you said, no, we'll rely on the First Amendment complaint as far. Now, what is your theory of fraud in this case? What was the fraud that you say Foster committed? Your Honor, I think if we look at the complaint — Not Foster. I'm sorry, Wilson. What was the fraud? The fraud is the statement that he would provide shares without the intent to do so. And I think if we read the complaint as a whole, and we take it as a whole, and we look at it liberally, then we find the pattern of lies and deception with regards to the transaction evidencing that fraud. But you originally alleged misstatements about the company, didn't you, in the first complaint? And then that was dropped. And now your complaint, as far as I can tell, says they were going to — he was supposed to buy the stock for them and didn't. Correct, Your Honor. Is that enough to establish fraud? We believe that under the Supreme Court's decision in Zanford, if the statement is made that he would provide stock without the intent to do so — Well, but you don't allege. You don't allege in your complaint anything about a lack of intent, do you? Well, again, if we read the complaint and we take it as a whole and we read it liberally. Well, and you don't allege it in the first claim, but you explicitly allege it in the second complaint. And it seems to me, in the light of that, I don't see how you can say that your first claim for fraud says that they didn't intend to turn over the stock or intended to convert the money. Well, Your Honor, it's correct that we did not say the use of the word intent in regard to the first claim. But, again, we have to keep coming back to the idea that the complaint has to be read as a whole under the Ronsoni case from the Ninth Circuit. And there is also a provision in the 1995 statute that fraud in securities cases must be alleged with particularity. A general allegation of fraud isn't enough to state a claim under the Securities Exchange Act. That's absolutely right. The PSLRA does require the pleading with particularity. But we believe that we pleaded the case very similarly to the way that a very similar case is analyzed from the Eastern District of Virginia, the Buttersworth case, where you basically set forth the five elements of the PSLRA, misrepresentation, materiality, CHR. What was the misrepresentation? That you would provide shares in exchange for money. That you would provide them with a stock? That you provide them with a stock. Is that your question, Your Honor? But all you say is that he provided them. Notice in paragraph 43 says he got the money, and the information and belief defendant never provided all of plaintiff's money for the purchase of shares, et cetera, et cetera, et cetera. It sounds to me, when I read it over, the most I can get out of it is the fraud was that he took their money and said he was going to buy stock, but he didn't. Why? That sounds to me like a breach of contract case. If I go to Merrill Lynch and give him some money and say I want you to buy a thousand shares of AT&T for me, and they say, fine, we'll buy the shares, this is the price, and we'll send the shares to you, and they don't do it, I don't have a claim for fraud against them, do I? Just on that, I have a claim for breach of contract. Well, Your Honor, I believe in light of the Supreme Court's decision in Zandford and when you take the complaint, again, as a whole and you read the other misrepresentations about when he was going to be providing the stock, it becomes clear that there was no intent to provide the stock, and without that intent, then there is fraud under the Supreme Court's decision in Zandford. Counsel, how about the fact, what I was bothered with in this case was the district court invited an aborted purchaser claim as an exception to a purchase, but your client did not amend, and then it looked to me like the money for nothing claim wasn't asserted in the district court. So if a claim wasn't asserted in the district court and is brought to us on appeal for the first time, are we supposed to review it? Well, Your Honor, in terms of that question of whether it was brought under the district court for the first time, if we look to the opposition to the motion to dismiss, Appley's supplemental excerpt to record, pages 101 to 104, we do state our argument for, or at least the basis for our money for no shares fact pattern that was replied to and the district court dismissed it in a footnote. So we did raise it admittedly, and we conceded this in our reply brief, we did not call it the money for no shares fact pattern, and we did not tie it up in a nice little bundle for the district court. That didn't happen until after the briefing on the motion to dismiss. It happened at the sanctions part of the case. So we didn't use that terminology, but we definitely find the substance of the argument, which is the idea that plaintiff provided money, defendant said he would provide shares without intent to do so, and he ultimately did not provide all the shares that he was supposed to. Why is that a securities claim at all? The misrepresentation as to the provision of securities? Okay, you know, I say to you, if you give me $1,000, I will buy gold bullion. Is that a securities claim? That's just a common fraud claim, right? Correct. I have no intention of buying gold bullion. I just want $1,000. That's correct, Your Honor. But if I say I'm going to buy shares for you, that becomes a securities claim? Yes, Your Honor. What if I say I'm going to buy shares in the XYZ company? There is no XYZ company. I'm making it up out of whole cloth. Okay. Is that a securities claim? Well, I believe it probably depends on how we define or how that transaction defines the securities under the securities law, what the definition is. That's what I'm asking you. You know, you're just restating the question. Okay. I don't have an answer. It's probably best just not to say anything. Is it a securities claim? I come to you and I say, you know, have I got a deal for you. I've got this great company. It's developed a product that if you sort of rub it on your head, it'll grow hair. Something that, you know, many men would do. I would be very interested in that, yes. I wasn't. I'm pointing the finger at anybody, but I see a co-counsel grinning. And, you know, this would obviously be a product that would, you know, could be very profitable. But it turns out there is no such product and there is no such company. All I'm doing is I'm trying to get your money. Do you at that point have a securities claim? Because I happen to mention the name company or shares or stock as part of my fraud? I don't believe you do, Your Honor, because I think the definition of securities and the federal securities laws assume or take into effect an actual existing company. Okay. So let's say I am now we get to our case, and let's say he never really, you know, he comes up with a real company, looks it up, does the research, or, you know, something much closer to our case. But he never intends to ever go out and buy the share. He has commenced no negotiations with them. He has no intention whatsoever. It's just a way of getting the money. And say, you know, if you just give me X number of dollars, I will get you the shares of this company. Never intends to. You know, there's a real company out there. They really do have shares. But the fraudster has no intent at all in buying the share. All he wants is your money. Is that a securities claim? I believe that is a cognizable federal securities claim. And why is that? Well, for two reasons. Number one, I think that falls squarely within what Zanford states is a violation of Rule 10b-5. And the second reason is we combine that with Supreme Court jurisprudence, which has always maintained that the federal securities laws have to be construed broadly to give Congress's intent in passing them, you know, to realize that intent. That principle you just announced is also coupled with a principle that securities fraud claims have to be particularly set forth. You can't just make a general argument. Well, let me tell you what's troubling me about your whole argument is I'm looking at your complaint here. And in Count 3, which is the common law deceit claim, Paragraph 54, you state as follows, Defendant's representation that he would purchase $150,000 worth of shares of CRD from CRD on plaintiff's behalves was false. At the time that the representations in each of them were made, defendant knew the representation was false because he intended to use a majority of plaintiff's investment to purchase shares in CRD for himself and his company. Defendant in each of them made the representations in each representation with the intent to deceive the plaintiff and with the intent to induce plaintiff's action and reliance thereon. Now, there's nothing similar to that in your securities fraud claim. And it seems to me when you make this allegation in your State law claim and don't make it in your Federal Securities claim, to me, the inference is inescapable that you are not making that as your claim of the Federal Securities Act claim. Well, Your Honor, that's hopefully not the inference that you would draw. I mean, clearly, hindsight being what it is, we could have put that statement in the beginning. But, again, taking the complaint as a whole and reading through the whole complaint Yes. So you should read into the Federal Securities claim allegations from the State law claims? Well, perhaps I misspoke. What I meant was the allegations that appear in the State law claim are based also on the general allegations. And so that particular allegation But the general, but this specific allegation that they intended at the time, not that but to, in effect, convert the money, that's not set forth, is it, in the general allegations, I don't think. You're right that the word intent is not. But in paragraph 44 of the first amendment complaint, which relates to the first claim, there we talked about, on information and belief, defendant never provided all of plaintiff's monies to CRD for the purpose of purchasing shares. And then it goes on to say, instead, Wilson purchased some of the shares from CRD on behalf of Foster, but used the majority of plaintiff's investments to purchase shares on his own behalf and behalf. Why do you say he purchased it with, not on his own behalf, used it on his own behalf? You don't, you never say in there that he, that's what he intended to do when he entered into the transaction with him. That's what's bothering me. And as I say to repeat what I said earlier, that you are given an opportunity to amend the complaint, but elected to stand on it. And it's, to me at least, it seems that you do not have in your complaint any allegation with respect to the Securities Act count that alleges a sufficient definition of fraud in it. Well, if I could say three things in response. Number one, I do think that when. It's always best to come up with one. That's really telling. If you have to have three, then you're probably in trouble. I appreciate that comment, Your Honor. But what I was going to say was number one, paragraph 44, I think when read liberally does allow an inference that we allege fraud, and maybe I'll just limit it to two in light of the Court's comments. The second thing that I would say is that. It's always best to start with the strongest one, not the weakest one. Well, I'm not quite sure which of the two is a stronger point, but. It wasn't the first one. Fair enough. The second thing I would say is that when we look at how we pleaded this particular complaint, it's actually very similar, again, to the Buttersworth case in Virginia where the Court did find a sufficient allegation or sufficiently specific allegations under the PSLRA, under pleadings that are very similar to what we plead in this case. I think what you really want to be arguing is that facts are facts. And that facts are alleged in the name of a complaint. Intent is a fact. And if they're alleged anywhere in the complaint, that is an allegation that that fact exists. And it is. You can have different legal theories alleged for different claims. But so long as you've alleged somewhere in the complaint a particular existence, a particular fact in the universe, a particular historical fact, that's sufficient and you're entitled to establish that fact and use it to support all of your claims. I think that's something like that. I'll take it. I think the third point that I came wanting to address, because both Your Honor, Judge Freeman and Judge Gould raised it, is why didn't we amend, having given the opportunity? Because you didn't want more sanctions. And, you know, ironically, that's not too far from the truth. I mean, that's, you know, the district court basically said I'm going to give you a chance to amend to allege a contract, not a chance to amend to cure some other deficiency. And quite honestly, we didn't think we could allege any more of a contract that we already had, which we think is good enough under the securities laws. And we didn't want to start creating things about a contract that would, in fact, be a violation of Rule 11. And so we were faced with the Hobson's choice. We either stand our complaint, we file a complaint alleging other things about a contract that we really couldn't and shouldn't be alleging, or we refile the same complaint and face a motion to dismiss that basically says ----  Well, you're way over your time. Are you going to let the court counsel argue the sanctions? Yes. I'm sorry. I'll yield the floor to Mr. Scott. Good afternoon, Your Honor. I think that the sanctions appeal can be fairly succinctly stated. We're talking with respect to the sanctions appeal just basically about notice and due process. This is a case, as you recall, where there was no order to show cause. It's just a regular notice motion. The notice motion made a variety of different arguments as to why the plaintiff should be sanctioned. There wasn't any standing. They conflicted with precedent. Fraud was implied with particularity. All of the arguments that were made in the motion were responded to, and the plaintiffs weren't sanctioned on those arguments. Sanctions were instead imposed based on arguments that weren't made in the moving papers, and certainly were not made with particularity. And because they weren't made, there was no opposition to them. There was no record making. Your Honor, it was pretty clear, and maybe you can correct me if you think I'm wrong, that the inconsistency or even perhaps contradiction between the first and second complaint was the basis of a number of the claims. And your client or your co-constituent understood that that was the heart of the sanctionable conduct. No, Your Honor. In fact, I would respectfully disagree. I think it's crystal clear when you read the district court's opinion that that's why they get sanctioned. There's no doubt about that. But not in the moving papers, Your Honor. Not whatsoever. What I attempted to do in the opening brief was to go literally through every line and say, this is about scienter, this is about pleading with particularity, this is about the standing argument. The closest you can come, Your Honor, literally the only two lines that you could even try to interpret to address the inconsistency issue are two lines in a 30-page memorandum that are instead talking about the failure to support the initial allegations with factual claims. So, Your Honor, you're exactly right that the relevant inquiry is whether or not those what they were sanctioned on was identified with particularity in the moving papers. But my strong, strong belief, Your Honor, is that it wasn't. And I think it's reflected by the fact that if you look in the district court's order, the excerpts of record on page 103, when she enters sanctions, she repeatedly says, as to the contradiction, plaintiffs provide no explanation for this, as to the change in date. They provide no explanation. And the reason, Your Honor, no explanation was provided was because that argument wasn't made, or at least wasn't made with particularity. If the argument had been made with particularity, Your Honor, I have no doubt whatsoever that the plaintiffs would have responded to it. But it just simply wasn't made in a way that certainly that highlighted the issue. And if Your Honor goes back and reads that, reads their moving papers, and thinks that it's clear, then, of course, we lose. But I think if you go back and look at those papers, it will not be clear at all. Those two little lines in 30 pages are actually talking about something else. And I think two lines in 30 pages isn't even good enough, even on its own. Thank you very much. Thank you. We'll hear from the opposing counsel. Good afternoon, Your Honor. Rick Augustini for the appellee. The Court, for the most part, has kind of echoed my sentiments as raised in our brief. I don't really have a whole lot to add. Do you want to ask opposing counsel a bunch of hard questions? The thing that I wanted to just point to is ---- Why don't you answer some hard questions yourself? I also don't get it. Your client is alleged to have promised securities, and he didn't come over them. Well, why is that a perfectly fine securities claim? Because there was no purchase or sale of securities. That's the blue chip holding from the ---- Yeah, but we've got an exception for that under the, what, the aborted sale or ---- In theory, if they could make the ---- The maturity terminated sale, let's call it. In theory, if they could make the factual allegations necessary to support that type of claim, which ---- They said, you know, he got their money, promised shares, intended not to deliver shares. If all those things are true, then what they have is perhaps a common-law claim for fraud. It doesn't mean they have a claim for Federal securities fraud or State securities fraud. You know, that's the standard law. Why is that? It's because there was no stock sold to at least two of the plaintiffs. Well, certainly stock was sold to one of them. Correct. Which absolutely flies in the face of their claim of securities fraud, since their allegation is that the appellee delivered 50,000 shares to Appellant Foster. So what we have here at the end of the day is we have what I've said ---- Are you saying there was no securities fraud here because they never turned over the ---- didn't complete the transaction? As to Appellant Foster, the issue is the failure to allege a false representation. It's just stock. Then let me change the case. I take it under your theory this would not be a claim of securities fraud. The allegation is that he took their money, agreed to purchase stock for them. But at the time he agreed and took their money, he had no intention of doing so. He represented to them that he would do it, but he didn't intend to do it. And his sole intention was to take the money and use it for his own purposes, maybe to buy a new automobile or a yacht or something, and he did it. And you say that wouldn't constitute a Federal securities claim? That's correct, Your Honor. That fact pattern sounds a lot to me like the Unity House decision, where that's basically what the allegation was, was that the person took the money, was supposed to provide stock, and didn't, used it for alternate purposes. Kennedy, not only that he's supposed to provide stock and didn't, but that he never intended to do so. That is, he had the intention to defraud them to take their money when he said he was going to buy the stock for them. I still don't believe that under the state of the law that would be securities fraud. And I would point out, Your Honor, that those are not the allegations in this case, as I believe you pointed out. I'm aware of that, but I just wanted to see, because it seemed to me the essence of the essence of fraud is some sort of either a – is some sort of misrepresentation, either an affirmative misrepresentation or, under the Securities Act, a failure to disclose information that had to be disclosed so that what was disclosed was not misrepresented. So … Well, that could very well be the case. And I think what this really comes down to is that there's a distinction in the law between common law fraud, which they may very well be able to allege in this case, and federal or state securities fraud, which has slightly different pleading requirements and requires specific things that they were unable to allege, and given the opportunity to amend two separate times, and were unable to allege. So … I'm still having a hard time figuring out why you think they have an alleged securities fraud. Let's say, in fact, he owns shares of this company already. He's bought them and he owns them. And he correctly states to them, I've got 100,000 shares of whatever this company is, right? And if you give me so much money, I will transfer to you the shares. So he owns shares, promises to deliver shares, takes the money, doesn't deliver shares, never did intend to deliver shares. That's a securities claim, right? I still don't believe so. I still don't believe so. Okay. Can you explain that to me? Well, because there's no actual purchase or sale of securities, and nor was it an allegation of either a contract or a broker-type relationship. But haven't the courts held that even though the transaction is not consummated, nevertheless, if all the other elements of a securities fraud case are present, that's enough? If you can meet the other elements. And that was one of the sticking points in this case. You know, down below, the appellants didn't argue the money for no shares. I don't care what they say. It's not in any of their papers. Nor did they argue the aborted purchaser doctrine, despite being given the opportunity to amend and do so by the court. If they had alleged the appropriate facts, then they may very well have been able to state a Federal securities law claim by association of state securities law claim. But the bottom line is, they just didn't allege those facts. For example, in their first complaint, they had certain allegations about the financial condition of the company that were supposedly made by the appellee. And then in their amended complaint, they withdrew all of those allegations and, in fact, changed critical dates to try and make it look like things were one way when, really, they were another way. They didn't allege that Mr. Wilson was serving as a broker. To the contrary, in their first complaint, they alleged that he was an agent of the company. And then only after the Court granted the first motion to dismiss, all of a sudden they changed that theory to he's no longer an agent, he's a consultant. Kennedy. If you want to argue the sanctions motion, we can do that, but it helps you not at all to argue the difference between the first and second complaint, and arguing whether the second complaint is sufficient on their merits. The second complaint stands on its own, and having sort of these sarcastic comments about the common or the difference between the two of them, I can't see how that could possibly help you. If you're happy. How that advances your case. With all due respect, I believe it advances my case because the hypotheticals and the questions that are being posed to me are assuming certain things being pled in the complaint that weren't, in fact, pled or, in fact, started to be pled and then were changed. I don't know what you're assuming. I mean, you ask questions about hypothetical situations. You understand the nature of hypotheticals, I gather. Hypotheticals are situations that are not the facts before us, but are posed to clarify, okay? By hypothesis, hypotheticals are different from the facts of the case, and then we can work our way back from the hypothetical to the facts of the case to see whether they're close enough so the answer to the hypothetical is meaningful. So I talk about the facts of this case. I mean, the complaint here, why isn't what's alleged here enough to state, you know, they do allege he's a broker, right? No, they do not. In the second complaint? No, Your Honor. I don't believe that they do. You just said they did. No, no, no, no, no. I said if they were able to allege that he was a broker and allege facts in support of that, that may help them to get towards the aborted purchaser. You know, we do have a tape of what you said, and what I heard you said was to say in the first complaint they didn't allege he's a broker, and in the second complaint they did allege, but okay. I mean, if you want. Well, if I did, then I apologize. I misspoke. But you don't have to be a broker to be subject to the Federal Securities Act, do you? Well, it depends on, you know, for instance, in the State Securities Law claims it talks about being a direct seller. In the Federal claims, securities law claims, the cases that the appellant cited, the Zanford case, I believe, involved actual brokers, licensed brokers. And I'm not aware of a case based on the facts pleaded in this case that would allow for Mr. Wilson to be held liable for Federal securities fraud. So even if he owns shares, and he promises to deliver the shares, and he takes the money, and then doesn't deliver the shares, I mean, he takes the money intending not to deliver the shares, that's not securities fraud, is it? I don't believe it is, Your Honor. Well, let me put it a little differently. Suppose I am the major shareholder in a company, and I tell you all sorts of glowing things about the company, the greatest opportunity that's been around for 20 years, and offer to sell you 60% of my shares and give you a controlling interest in it. And let's assume I do that. But, in fact, everything I've told you about the company is a lie. Its prospects, instead of booming, are disastrous. Shortly thereafter, after you purchase the 60% of it, and I've taken your money and headed off to Europe, the company goes under. Is that not a violation of the Federal Securities Act on my part, because I'm not a broker, because I'm only the principal owner of the company? No. In that case, I believe it would be, Your Honor. Why? Because for two reasons. First of all, you've supposed the falsity allegations that would be necessary to state a Federal Securities law claim. Plus, you've also satisfied the actual purchaser requirement. So you will have satisfied, in your example, both of the things that we're lacking in this case. But would the result be otherwise if it was exactly the same, except I took your money and went to Europe, but never turned the shares, never gave you the shares. I kept them. That, you say, would not be a violation of the Federal Securities Act? Based on my reading of it, I don't believe it would be, sir. I believe you would have a common law claim for fraud, perhaps, but not a Federal Securities law claim. And that's really the issue here from the appellee's perspective. But if you were the issuer, that would be different. Let's say you are the company itself, or the market maker in the company's stock. So a broker that's in there. And same thing. You are out there, you are getting people to give you money, promising to issue shares, but you never intend to do it. You're just using that as a way of getting them to give you money. That's also not a securities claim? Just to be clear, are you supposing the same set of facts that Judge Friedman was in terms of false statements about the prospects of the company and all of these types of things? Because if you are, my answer would be yes. You would, because you would satisfy the falsity, the misrepresentation prong of the statute. Okay. And what if the answer is no, all you're doing is you are telling perfectly truthful things about the stock and the company. You, in fact, did have a patent to cure male hair loss, but you just don't intend to partner with any of those shares because you think they're too valuable. But this is a good way to get people to give you money. So you tell them glowing and true things about the company. You misrepresent nothing except your intention to deliver shares. I don't believe, based on my reading of the cases in the statute, that that would be Federal securities fraud. Okay. And the reason is because, once again, you're missing, first of all, you're missing the falsity prong, the false statement that I will get shares. That sounds a lot to me like the Unity House case, which is kind of what happened there, that representation has to be in connection with the shares, the value. Unity is a district court case, as I recall, right? I know. Excuse me. 918 F sub. This is Hawaii. Maybe there's another Unity case. Nope. That's the one. It is a district court case, Ron. In our district, in our circuit, rather. Yes, Ron. So it's only as good as persuasive, right? That's correct. Okay. We wouldn't even have to bother overruling it. We could just ignore it. No, Your Honor, you would not. Okay. So you've got to come up with a better argument than it's just like Unity House. Well, Unity House, I don't have a copy of it in front of me, but I believe that it relied on Would you like to look at a copy? Yes, I would, actually. Okay. Here we go. You can take my book here. It's open to you in the house. Yeah. I'm sure you don't have a weapon with you. Okay. Ignore the comments about the lawyers on the margins. It's okay. My father's a lawyer.  You have the case there? Beg your pardon? Is it still open? Yes, it's right here. I was just looking to see specifically what my reference. Or why you were so hopeful about Unity House. It would help if I look at the right page. Yeah. I gather you don't know off the top of your head what you had in mind. No, no, no. I do. But I just wanted to look at the specific reference because my presumption was that Unity House didn't just make it up on its own, that it had cited to other authorities. And it's head note number eight. And what Unity House relies on a couple of other cases, both of which appear to be district court cases as well, for the proposition. And here it says, here, Unity House alleges that the defendant purchased and sold securities using money it had converted or misappropriated from Unity House. This does not, however, make Unity House a purchaser or seller under the Act. And that's the proposition for which we cited to Unity House. How does that help you? I'm sorry. I just want to see how that helps you. You had asked me whether a plaintiff who had had misrepresentations made to him to the effect that that person was going to go out and buy stock and give it to the purchaser, if that was, in fact, false, whether that would be securities fraud. And my answer to you was no. I think my question concerned a issuer, a company that issues stock. And it, you know, the office of the company, the owner of the company, the holder of all the stock, is going around saying, we will issue, it will sell stock, the company will sell its own stock, but intends to issue no stock at all, just wants to get money for it from people. And he tells perfectly truthful things about the company. The company, in fact, has glowing prospects because it has this great product or, you know, whatever, but he intends to part with none of the stock. He's just making this truthful representation about the company with a fraudulent intent to take the money but not deliver the stock. And I asked you whether you thought that was a securities claim. He said, no, Unity House says it's not. And that's where we were. And you were going to point out what in Unity House was a persuasion on that point. Because the representation as to whether the stock is going to be delivered, in other words, if the misrepresentation is you told me inaccurate things about the company to get me to invest in the company, and I did, in fact, invest, no doubt about it, you have a Federal Securities law claim. Right. So if the representation, the way I read Unity House and the other cases that I read in briefing this matter, is that I will get the shares and sell them to you, but I don't and I never intended to, then that would not be Federal Securities fraud, although it may be breaching contracts and it may be common law. You know, it's the get the shares part that I have some difficulty with because that wasn't part of my question. Well, then I apologize. You know, if you have an issuing company, you don't have to go get the shares, you just print them yourself. Okay. Okay, so you're not going out and getting shares, you're talking about your own company, you're talking about yourself. And you're telling people, we're going to issue a share, we're going to have a public offering, we're going to issue public shares. But you don't intend to do that, you have this big offering, you get people's money, and then you don't issue any shares, never intended to. It's the go get the shares part that you keep bringing in, and I don't, I just don't. And the reason why is because in the facts of this case, that's what you found out. Well, I understand, but I don't want to, you know, we can, you understand about talking about the answer? No, I understand exactly what you're saying, Your Honor. So what is the answer to my question? You're not, you don't have to go get the shares. Would the issuer be liable for securities fraud? God, yes, it's taken 10 minutes, but I think you now understand my question. You know, I don't know the answer to that question. Well, let me, Bill, now, why not? Well, the thing I'm. It seems to me you've got all the elements, it was securities were to be sold, and there was a mis, and they didn't intend to do it. And let's assume, if you want, if I may add one thing that's what the issuer tells all the people who give him the money is, I'm going to issue the shares the first of next month. And what he does before the first of next month, he just puts the money in his pocket and never issues shares. Why isn't that fraud in connection with the sale of a security? The thing I'm struggling with is that there's no actual purchaser because the shares were never delivered. That's the thing I'm struggling with. And I wish I could provide you with a better answer, but I just can't. You mean, when I go and buy a car and pay, you know, sign for it, pay for it and all that, and I go to get it, and the car dealer says, see, here are the keys, but you know what, you can't have it. You can't drive it off the lot. In fact, we've put a Denver booth on it just to make sure you don't. At that point, you are not a purchaser of the car. That's what you're telling us. Well, I would presume that you are because you had signed a contract for the purchase of the car and you had delivered the money. OK, so now you've got a situation where what you're doing is buying stock. There's a public offering or the issuer is offering the stock and comes to you and says, I'd like you to buy 10,000 shares of the stock. We're about to issue next month. And you say, that sounds like an awfully good deal, like a great product. I will buy it. Here's the money. And you sign a contract for delivery of the stock. At that point, you are a purchaser or not? If you if you've signed a contract, then my understanding of the law is you'd fit within the the aborted. Is that a yes or no? Why are you taking? Well, are you a purchaser of the stock? Are the facts as I have posited them or not? Are you the purchaser of the stock? I don't believe so, Your Honor. Not unless. When I buy the car and I sign a contract and I pay the money and they won't let me have the car, I'm a purchaser of the car. You say that. But if the thing is stock, even though all the facts are the same, except for the keys, since there are no keys to go to the stock. Then at that point, you're not a purchaser of the stock. If you're a purchaser of the stock, assuming you can fit within the aborted purchaser exception. And that was one of the issues. That was the issue in this case. Well, I'm not sure what you're saying, but OK. Well, because that was the issue in this case, Your Honor. There are three separate plaintiffs. One of them has a problem that he got stock, but he hasn't alleged falsity of any representation of any kind. Two of the others didn't get stock and they didn't try and allege facts to get themselves within the aborted purchaser doctrine. I don't know what's so difficult about answering the question you've been asked, but if you don't want to answer it, that's fine. You want to talk about other stuff. Well, believe me, it's not that I don't want to answer your question. Are you a purchaser of the stock if you have a contract for the purchase of the stock, but the stock is not delivered? That's a simple question capable of a yes or no answer. Or maybe I don't know. I'd like to look it up, but I don't want to hold McGillivre. But, you know, why? You know, just tell me, are you a purchaser if you don't get the stock or do you actually have to get the shares to be a purchaser? You're not you're not you're not an actual purchaser of stock under the federal securities laws, as I understand. Federal securities laws, you're not a purchaser even though you have a contract until the stock is actually delivered. Correct. OK, I understand that question. I understand that answer. I'm not sure it's right, but I do understand it. And the reason I say that is because you're not an actual purchaser, but the aborted purchaser doctrine does exist. And you may very well be able to state a claim even though you didn't actually receive the shares under the aborted purchaser doctrine. If that had taken place, if those allegations had been made, we might not be here. And the reason you're not a purchaser is because of the non-delivery of the stock. Even though there was an obligation to deliver, even though you have legal entitlement to the stock, you are not a purchaser. You haven't bought it because it hasn't been delivered. There are all sorts of things in life where you buy things that are not delivered. And you would say securities laws are different at that point until you get delivery. And you're basing all this on that 1975 Supreme Court case. Beg your pardon? You're basing all of that on that 1975 Supreme Court case. No, no, I'm also basing it on the blue chip case, the United States Supreme Court case. Is it a 1975 Supreme Court case? No, it's, well, I thought you said the 19, let me double check. I don't have the dates of all the cases committed to memory here. Well, maybe if you give me back my book, I can help you out here. Sure. Okay. Okay. I think, I think we've understand your position. Do you want to say anything about the sanctions? Yeah, I was right. Blue chip stamps is 1975. Okay. I should know. I graduated from law school that year. And I stand corrected. With respect to the sanctions award, it's briefed extensively by both sides. You heard Professor Martin's argument. I did. And you think fair notice was given. I do. And point to me in the excerpts where that fair notice exists. The fair notice exists. I've got the excerpts of mine and I'm willing to go to any page you point me to. Just tell me what page. Excuse me for one second. Did you know you have internet access by, in the courthouse now, wireless internet access? You know, I learned that when I turned on my machine first time this morning. We aim to serve you. And I tend to, rather than log around all of these briefs, I tend to scan them. Also allows you to play, look at your eBay auctions while you're waiting for your case to come up. In, I'm looking at the, at our supplemental excerpts of record at what I believe is page 135. Okay, 135. There are tabs here, but it's consecutively paginated. That would be number seven, tab number seven, I believe. Tab number seven. Okay. And I'm looking at, within page number seven, we're looking at page what? 135? It should be page two of the actual motion, which is the notice. I'm sorry. You have to give me a page number with it. You see the little numbers at the bottom? You didn't. Let's go. Here we go. It was, it was cut off on my. Page 124. You didn't bring the excerpts with you? Beg your pardon? You didn't bring the excerpts with you? No, I have them scanned into my computer. I have them right here. So the answer is you didn't bring the excerpts with you? No, I have them in my car once I made sure that these work. Well, it's always good to have them fully scanned. Anyway. I do just want to. Page 124. Okay, go ahead. With respect to, in subsection one there, first thing for relief. The opposition's lack of evidentiary support were not warranted. And then if you. But, but you understand that district court granted the, the sanctions based upon the differences between the first and second. I mean, it basically said, you know, you have, you had a bunch of claims in the first complaint, and then the second complaint, you turn your back on that. And that tends to prove that the first set of claims was, was, was frivolous. Right. Now that's a pretty good claim. And you'd expect them to understand that that's what they were, you'd expect them to explain why they did that. I would agree. Was it, so, so the question is, where did you guys raise that, the difference between the two complaints as, as being the basis for sanctions? It, it, at page 128, same document you're looking at. 128, okay. What line? Beginning at line 8. More particularly, beginning at line 12, references to change in theory from alleging specific factual misrepresentations to the fact that he was now just, he had promised to purchase stock. Okay. So that was it. Now, and then there's also another reference at, at pages 10 and 11, and specifically at, at page 133, beginning at line 4. Oh, I, I see what they mentioned was the first complaint there, but not the second one. Well, that, that reference is the first amendment complaint. The things that say it's sanctionable because you alleged the first complaint, but then repudiated the second. Well, if you, if you go down to line 18, it talks about, or starting with line 15, had plans to conduct an investigation required under the PSLRA prior to filing suit, it would have been readily apparent that no facts existed to support the allegations, and then it goes on to say it's apparent from the fact that all of the misrepresentations were abandoned in the first amendment complaint. Okay. Thank you. You seem so anxious to speak. Now, everybody who's gotten up to rebuttal today has lost ground, but go ahead. If you want to take a minute to lose ground as well, go ahead. I am actually very mindful of that, and I just want to make one brief point on the aborted purchaser doctrine. It's, I think, appellee would have to concede that if there is a contract between two parties for the purchase, you know, or sale of shares of stock, then you have standing to bring a federal case. Here, we were not, plaintiffs were not. Well, I know that he might have to do it. I mean, you may think he has to do it, but I remember distinctly that he refused to do that. So what makes you think that that's the case? Well, I think. I mean, you just stood up and made the opposite contention without giving me any authority either. Well, I would point the quote to the Mount Clemens case on the Ninth Circuit and the Rocher case. Oh, Ninth Circuit. They get so frequently reversed. How reliable are they? The, the, what's the, what's the story of the case in there? It's the Mount Clemens case, and I don't have the dates come into memory either, but I think it's the 1972 case, and I believe it's footnote 12. Ah, those ones are in the Halcyon days when we used to get a friend. Well, this is the aborted purchaser doctrine. It's about the aborted purchaser doctrine, and the idea is that if there's a contract for the purchaser of sales stock, but the contract isn't performed by virtue of fraud on the part of the person who's supposed to provide the shares, then you have standing. Now, I think the district court, perhaps, I believe, both got hung up on the idea of what constitutes a contract. Do you have to have something of formal written writing? And again, I would refer the court to the Mount Clemens case where the court said, no, the, the word contract, at least in the Federal Securities area, we interpret very broadly and not narrowly, and so, and actually uses the term agreement coterminously with the term contract. Here, we have an agreement. Plaintiffs would give money. Defendants would give shares. Oh, let me just ask you this. Suppose I take your money, and at the time I take your money to purchase shares, I have every intention of purchasing your shares, but it's going to take me a month or so because these are scattered shares, and in the interval, after two weeks, I suddenly discover that with your money, I can find myself as a blonde. Now, I've been keeping my eye on, and I discover that with your money, I can take her away and spend three months in Europe with her, so I decide that's a better thing to do with your money than to buy shares for you, and I proceed to do that. Have I committed securities fraud? Well, Your Honor. At the time I entered into the transaction, when I took your money, I intended fully to buy the shares from you, but then as a result of intervening circumstances, I changed my mind. It would seem to me that that's nothing more than an old-fashioned breach of contract claim. Under that particular hypothetical, if the intent was to provide the shares at the first instance. The original, the intent at the time was to go ahead with the deal and to buy the shares for you and turn them over to you, but before I actually got around to buying the shares, I changed my mind and discovered I could use the money, what I considered more profitably and more to my advantage. Could that be a securities fraud? Could that be a securities fraud claim? Candidly, under what the Supreme Court had, the terminology that they. And I don't want to hear, just what's the answer to that? Yes or no? No. No. Okay. That's all. Might I just add an explanation to my no? You have 15 seconds. Yeah. And the reason I say no is basically because of the precise language that the Supreme Court stated in Zanford. That's what I was going to say. Thank you, Your Honor. Okay. Any further questions? Thank you, counsel. In case you thought you were standing, we are adjourned. Thank you.
judges: Friedman,, Kozinski, Gould.